## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HILDA L. VELAZQUEZ MENDEZ
ex rel. S.M.R.V.,

        Plaintiff,

        v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:21-cv-00260

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

The plaintiff, Hilda L. Velazquez Mendez, as parent and natural guardian of S.M.R.V., her minor daughter, brought this action under 42 U.S.C. § 1383(c)(3), and, as incorporated by reference, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner or Social security denying S.M.R.V.'s claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). The matter has been referred to the undersigned United States magistrate judge on

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On February 28, 2018, Velazquez protectively filed an application for supplemental security income ("SSI") benefits on behalf of her minor daughter, S.M.R.V., alleging a disability onset date of January 1, 2014. The claim was initially denied by state agency reviewers on October 30, 2018. The plaintiff then requested an administrative hearing.

A hearing was held on September 19, 2019, before an administrative law judge, Randy Riley (the "ALJ"). Velazquez appeared and testified on behalf of S.M.R.V., with the assistance of a Spanish-language interpreter. The plaintiff was represented by counsel at the hearing.

On May 6, 2020, the ALJ denied S.M.R.V.'s application for benefits in a written decision. The ALJ determined that S.M.R.V. was not entitled to SSI benefits because she was not under a disability as defined by the Act. Specifically, the ALJ found that S.M.R.V. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.

The plaintiff sought further administrative review of her claim by the Appeals Council, but her request was denied on December 16, 2020, making the ALJ's May 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on February 12, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether S.M.R.V. is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")

(alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

With respect to children under the age of 18, the Social Security regulations consider an individual to be "disabled" if he or she has "a medically determinable physical or mental impairment[2] or combination of impairments that causes marked and severe functional limitation, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i). A child has "marked and severe functional limitations" if he or she has an impairment or combination of impairments that "meets, medically equals, or functionally equals" the listings found at 20 C.F.R., Part 404, Subpart P,

---

[2] "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D); *see also* 20 C.F.R. § 416.908.

Appendix 1. *Id.* § 416.902; *see also id.* § 416.911(b). However, "no individual under the age of 18 who engages in substantial gainful activity[3] . . . may be considered to be disabled." 42 U.S.C. § 1382c(a)(3)(C)(ii); *see also* 20 C.F.R. § 416.906.

The Commissioner follows a three-step sequential analysis to ascertain whether a child is disabled and therefore eligible to receive SSI benefits. *See* 20 C.F.R. § 416.924(a). Under this process, the ALJ must determine in sequence: (1) whether the child is engaged in substantial gainful activity (*i.e.*, whether the child is working), *id.* § 416.924(b); (2) whether the child has a medically determinable impairment or combination of impairments that is severe (*i.e.*, whether the child has an impairment or combination of impairments that cause "more than minimal functional limitations"), *id.* § 416.924(c); and (3) whether the impairment or combination of impairments meets or medically equals the severity of a listing, or functionally equals the listings, in 20 C.F.R., Part 404, Subpart P, Appendix 1, which describes impairments that cause marked and severe functional limitations, *id.* § 416.924(d).

---

[3] "Substantial gainful activity means work that . . . [i]nvolves doing significant and productive physical or mental duties; and . . . [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910.

Within each of the individual listings considered at step three, the regulations specify the objective medical and other findings needed to satisfy the criteria of that listing. An impairment or combination of impairments *meets* a listing when it satisfies all of the criteria of that specified listing, and it meets the duration requirement (*i.e.*, it is expected to cause death or has lasted or is expected to last for a continuous period of not less than 12 months). *Id.* § 416.925(c)(3); *see also id.* § 416.909 (duration requirement). An impairment or combination of impairments *medically equals* a listing when it is at least equal in severity and duration to the criteria of any listed impairment (*e.g.*, the child exhibits all but one of the findings specified in a particular listing, but other related findings are at least of equal medical significance to the required criteria). *Id.* § 416.926(a),(b). An impairment or combination of impairments *functionally equals* the listings when it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a).

In assessing functional equivalence, the Commissioner considers how the child functions in terms of six "domains" or broad areas of functioning intended to capture all that a child can or cannot do:

(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with other children; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). A child has a "marked limitation" in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities; a "marked limitation" is more than moderate but less than extreme. *Id.* § 416.926a(e)(2). A child has an "extreme limitation" in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities; an "extreme limitation" is more than marked. *Id.* § 416.926a(e)(3). "Extreme limitation" is the rating given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. *Id.*

## III.   THE ALJ'S DECISION

In this case, the ALJ reached the third step of the sequence, at which point he determined that S.M.R.V. was not disabled. The ALJ first determined that S.M.R.V. had not engaged in substantial gainful activity since February 28, 2018, the date when her application for SSI benefits

was filed. The ALJ next found that the medical evidence of record established that S.M.R.V. had severe impairments of: ADHD; unspecified disruptive, impulse-control, and conduct disorder; anxiety; and adjustment disorder.

At step three, the ALJ evaluated S.M.R.V.'s impairments under listings 112.04 (depressive, bipolar, and related disorders), 112.06 (anxiety and obsessive-compulsive disorders), 112.08 (personality and impulse-control disorders), and 112.11 (neurodevelopmental disorders), and found that S.M.R.V.'s impairments did not meet or medically equal these listings. In doing so, the ALJ considered S.M.R.V.'s limitations in four broad functional areas as a result of mental disorders, finding no more than moderate limitations in all four functional areas— (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404 subpt. P app. 1, § 112.00(E) (explaining the four areas of mental functioning); *id*. § 112.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection

with listings 112.04 and 112.06, the ALJ also considered whether S.M.R.V.'s mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 112.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

The ALJ then considered whether S.M.R.V.'s impairments, both severe and non-severe, functionally equaled the listings. In doing so, the ALJ followed the "whole child" approach set forth in Social Security Ruling 09-1p, which provides:

> The functional equivalence rules require us to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments. After we determine how the child functions in all settings, we use the domains to create a picture of how, and the extent to which, the child is limited by identifying the abilities that are used to do each activity, and assigning each activity to any and all of the domains involved in doing it. We then determine whether the child's medically determinable impairment(s) accounts for the limitations we have identified. Finally, we rate the overall severity of

> limitation in each domain to determine whether the
> child is "disabled" as defined in the Act.

Soc. Sec. Ruling 09-1p, 2009 WL 396031, at *2. The ALJ considered the

evidence of record and presented detailed findings with respect to

S.M.R.V.'s limitations and their severity, domain by domain. Ultimately,

the ALJ concluded that S.M.R.V. had: (a) less than a marked limitation

in acquiring and using information; (b) less than a marked limitation in

attending and completing tasks; (c) less than a marked limitation in

interacting and relating with others; (d) no limitation in moving about

and manipulating objects; (e) less than a marked limitation in the ability

to care for herself; and (f) no limitation in health and physical well-being.

Having found that S.M.R.V. did not have an impairment or combination

of impairments that resulted in "marked" limitations in two domains of

functioning or an "extreme" limitation in one domain, the ALJ concluded

that S.M.R.V.'s impairments did not functionally equal the listings at 20

C.F.R., Part 404, Subpart P, Appendix 1, and therefore she was not

disabled and not entitled to receive SSI benefits.

## IV.  DISCUSSION

Under the Social Security Act, the question before this court is not

whether the claimant is disabled, but whether the Commissioner's

finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

The plaintiff asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ found certain of S.M.R.V's impairments "not severe" at step two of the three-step evaluation process; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinion of a non-examining state agency psychological consultant; (3) the ALJ failed to properly evaluate the medical opinion of the plaintiff's treating mental health provider, a certified registered nurse practitioner; (4) the ALJ failed to properly consider other evidence of S.M.R.V.'s functional limitations, including teacher questionnaires and IEP reports; (5) the ALJ failed to properly consider Velazquez's subjective allegations regarding S.M.R.V.'s symptoms; and (6) viewed in whole, the evidence of

record supported a finding of disability.[4]

## A. Step Two Determination

The plaintiff contends that the ALJ erred in failing to find various of S.M.R.V.'s medical conditions were also severe impairments. Namely, the plaintiff contends that the ALJ erred in failing to find that S.M.R.V. had the additional severe impairments of intermittent explosive disorder, depression, and sleep disorder.

At step two, the ALJ found that S.M.R.V. had several severe impairments including: ADHD, unspecified disruptive, impulse-control, and conduct disorder, anxiety, and adjustment disorder. The ALJ then proceeded on to step three of the evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments."

---

[4] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ's functional equivalence analysis failed to include all limitations caused by S.M.R.V.'s severe impairments; (2) the ALJ failed to include certain other impairments among the severe impairments found at step two of the three-step evaluation process; and (3) the ALJ's functional equivalence determination was defective because the ALJ failed to afford appropriate weight to medical opinions on which it was based. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in S.M.R.V.'s favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the evaluation process. Thus, any error with respect to evaluation of the severity of any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed.

App'x at 88.[5]

## B. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our

---

[5] Moreover, as the Commissioner notes in her brief, the medical evidence discussing S.M.R.V.'s sleep and mood conditions addressed them as symptoms of her diagnosed severe mental impairments, not as independent mental disorders in their own right. While the evidence cited by the plaintiff references a reported *history* of intermittent explosive disorder, there is no objective medical evidence of such an active diagnosis; this aspect of S.M.R.V.'s behavioral health appears to be addressed by her unspecified disruptive, impulse-control, and conduct disorder diagnosis.

own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in February 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.[6]

---

[6] We note that, with respect to the ALJ's evaluation of medical opinions, the plaintiff has relied on the old regulations in support of her argument that nurse practitioner Harper's opinion is entitled to "greater weight" than that afforded to a non-examining state agency medical consultant. As discussed in the text that follows, those regulations simply no longer apply. But even under these superseded regulations, as a nurse

*(continued on next page)*

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the

---

practitioner, an opinion by Harper would not have been entitled to any special weight, as she would not have qualified as an "acceptable medical source" from whom a "medical opinion" could be received. *See Will ex rel. C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 419, 427 (W.D.N.Y. 2019); *see also* 20 C.F.R. § 416.927(a)(1) (limiting "medical opinions" to "statements from acceptable medical sources"); *id.* § 416.902(a) (defining "acceptable medical source" to include advanced practice registered nurses, such as certified registered nurse practitioners, only with respect to claims filed under the *new* regulations).

evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520, 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment

relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), *and id.* § 416.920c(c)(2) (consistency), *with id.* § 416.927(c)(3) (supportability), *and id.* § 416.927(c)(4) (consistency).[7] An ALJ is specifically required to address these two

---

[7] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

*(continued on next page)*

factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings in this Case*

The ALJ considered the prior administrative findings in this case, which included the medical opinion of a state agency psychological consultant.

The prior administrative findings included the opinion of a state agency psychological consultant, John Gavazzi, Psy.D., who found that M.S.R.V. had less than marked limitations in four of six domains—

---

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

(a) acquiring and using information, (b) attending and completing tasks, (c) interacting and relating with others, and (d) caring for yourself—and no limitations in the two remaining domains—(e) moving about and manipulating objects, and (f) health and physical well-being. In evaluating the opinion of Dr. Gavazzi, the ALJ found that:

> This opinion is persuasive. As a State agency consultant, Dr. Gavazzi reviewed the claimant's available treatment records prior to rendering his opinion, which he fully supported. He noted the claimant's issues with attention and concentration, receives ESL (English as a secondary language) related services at school, and has some limitations in terms of self-care and coping skills. His assessment is also consistent with the additional evidence received at the hearing level and her overall progress with mobile therapy services and that she was doing well in the school setting.

(Tr. 20.)

The plaintiff only addresses this particular medical opinion in passing. She appears to object to this evaluation of the state agency psychological consultant's findings and opinion based solely on the fact that Dr. Gavazzi never actually examined S.M.R.V. in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical

evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's mental limitations, including the medical opinions of a state agency psychological consultant, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## 2. Treating Mental Health Provider Opinion

On August 16, 2019, S.M.R.V.'s treating mental health provider, Shannon Harper, CRNP, completed a childhood disability evaluation form. Harper noted that S.M.R.V. had been treating with her practice on a monthly basis for about one-and-a-half years. Harper reported current diagnoses of attention deficit hyperactivity disorder (combined type), oppositional defiant disorder, and unspecified anxiety disorder. She opined that S.M.R.V.'s medically determinable impairment or combination of impairments were functionally equal to the listings

because they resulted in marked limitations in two domains. Harper found that S.M.R.V. had no limitations in three domains—(a) interacting and relating with orders, (b) moving about and manipulating objects, and (c) caring for yourself—and a less than marked limitation in a fourth domain—(d) acquiring and using information. In the two remaining domains, Harper found that S.M.R.V. had a marked limitations. In finding a marked limitation in the domain of attending and completing tasks, Harper explained that *"[w]hen she is without ADHD meds* she has a harder time completing tasks [and] remaining focused." (Tr. 616 (emphasis added).) In finding a marked limitation in the domain of health and physical well-being, Harper explained that S.M.R.V. "[m]ay have increased aggressive [and] emotional outbursts *if she is without medications*." (Tr. 617 (emphasis added).) In a narrative explanation of her findings, Harper further acknowledged that S.M.R.V.

> is currently taking medications for her behaviors. In the past when she has not been medicated[,] she ha[s] had verbal [and] physical aggression, self injurious behaviors[,] [and] emotional dysregulation. . . . She continues to receive medication management for her behavioral disorders [and] [without] these meds she would have difficulty in school [and] at home [with] focus/attention [and] behaviors.

(Tr. 619.) Harper recorded a positive prognosis, noting that S.M.R.V.'s

"behaviors are well managed with medication [and] therapy." (Tr. 620.) She also expressly confirmed that S.M.R.V. was compliant with treatment. (*Id.*)

Upon review of Harper's opinion, the ALJ found it "not persuasive." In particular, the ALJ found that:

> [T]he record indicates that the claimant is overall healthy from a physical and mental standpoint with the above marked limitation in that domain not supported. Regardless, Ms. Harper's support for the marked limitation, which would be relevant to consider under other domains, is not consistent with the claimant's overall improvement with treatment and her overall stable presentation per Ms. Harper's own treatment notes. Ms. Harper's other marked finding also considers the claimant's functioning without medication and is not consistent with the claimant's overall academic performance and behavior within the school setting as noted throughout the record.

(Tr. 21 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency, expressly articulating his findings on these required factors. Moreover, as the ALJ noted, Harper's "marked" findings in both domains were expressly conditioned upon the child's function *when not taking her medications*. But, as Harper noted elsewhere in the same evaluation, S.M.R.V.'s

behavioral disorders were "well managed" with medication, and she was compliant with treatment. It is implicit in Harper's conditional finding that S.M.R.V. had marked limitations in these two domains without medication that the child had less than marked limitations *with* medication, and thus the ALJ had substantial evidence to support his finding that S.M.R.V.'s underlying mental impairments are capable of being adequately controlled with medication therapy and, in that context, they do not result in marked limitations in any of the six domains. *See Rickabaugh v. Berryhill*, 271 F. Supp. 3d 721, 736 (D. Del. 2017); *Sheriff v. Barnhart*, 244 F. Supp. 2d 412, 431 (W.D. Pa. 2002); *see also Dearth v. Barnhart*, 34 Fed. App'x 874, 875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") (quoting *Gross v. Heckler*, 785 F. 2d 1163, 1166 (4th Cir. 1986)); *Ortiz ex rel. A.L. v. Berryhill*, Civil Action No. 3:16-CV-01613, 2017 WL 9324737, at *5 (M.D. Pa. 2017) ("An impairment cannot serve as the basis for disability if it can be reasonably controlled by treatment or medication.").

Accordingly, we find the ALJ's evaluation of the medical opinion by treating nurse practitioner Harper is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## C. Teacher Questionnaire and IEP Reports

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to afford proper weight to teacher questionnaires and IEP reports. The plaintiff refers to both types of evidence only broadly, arguing that they "should have been afforded more weight" than the medical opinion of a state agency psychological consultant upon which the ALJ primarily relied.

The plaintiff argues that the ALJ failed to consider IEP reports that supported greater limitations than those found by the ALJ, but the plaintiff has failed to cite any such reports in her brief, presumably because *there simply are no IEP reports in the administrative record*. Indeed, it is clearly documented in the record before us that S.M.R.V. *did not* have an IEP plan. The record includes an October 2018 response to a request for administrative information completed by the school psychologist at S.M.R.V.'s elementary school, who stated that:

> [S.M.R.V.] is performing at grade level in all academic areas. She is in regular education. She does not have an IEP or a 504 plan. She does not receive intervention. Her behavioral, social, and emotional functioning is typical for a third grader.

(Tr. 299.) Moreover, the ALJ expressly discussed this report by the school

psychologist. (Tr. 19.)

The plaintiff also argues that the ALJ failed to consider one or more teacher questionnaires that purportedly supported greater limitations than those found by the ALJ. Here, the plaintiff does actually cite to one such questionnaire that may be found in the record[8]—an October 22, 2018, teacher questionnaire completed by the school nurse at S.M.R.V.'s elementary school. The school nurse reported that S.M.R.V. demonstrated less-than-serious[9] problems in the domain of acquiring and using information, but she further explained that these problems appeared to be "strictly . . . related to the language barrier," rather than any mental or emotional impairment. The school nurse reported that the child also demonstrated less-than-serious problems in the domain of interacting and relating with others, noting that it had not been necessary to implement behavior modification strategies for the child.

---

[8] She also cites S.M.R.V.'s school health record, which contains no material information at all. (*See* Tr. 214–39.)

[9] The form prompted the educator completing it to rate the child on various activities within a given domain on a scale from "1" to "5." A "1" reflected "no problem" at all, a "2" reflected a "slight problem," a "3" reflected an "obvious problem," a "4" reflected a "serious problem," and a "5" reflected a "very serious problem." Even where the school nurse did find some limitations, she rated *none* as "serious" or "very serious."

She reported that S.M.R.V. demonstrated less-than-serious problems in the domain of caring for herself, observing that the child had "little patience" and was "quickly frustrated," but also noting that "her behaviors are never *drastic*."[10] The school nurse reported "no problems" in the domain of attending and completing tasks and the domain of moving about and manipulating objects. The form did not request information on the domain of health and physical well-being. (Tr. 175–82.)

Contrary to the plaintiff's suggestion, the ALJ clearly considered and expressly discussed this teacher questionnaire in detail. (Tr. 21.) Ultimately, the ALJ found the school nurse's report "only somewhat persuasive to the extent that it shows that the claimant has some problems in the school setting but with overall no significant problems or concerns." (*Id.*) Although an ALJ is required to *consider* such nonmedical evidence, under the new regulatory framework discussed in the preceding section, adopted effective March 27, 2017, "an ALJ is not required to 'weigh' or 'assess' such nonmedical evidence, articulating

---

[10] This emphasis on the word "drastic" was provided by the school nurse, who underlined it in her comments.

reasons for assigning it specific persuasive value, as in the case of medical evidence." *Jorge M. v. Kijakazi*, Civ. No. 21-13794 (KM), 2022 WL 4536267, at *11 (D.N.J. Sept. 28, 2022). Under these new rules, "an ALJ does not have to discuss the supportability or consistency of the opinion because a teacher's opinion is not a *medical* opinion." *Connors ex rel. R.M.C. v. Kijakazi*, Civil Action No. 4:20-CV-2338, 2022 WL 4080248, at *11 (M.D. Pa. Sept. 6, 2022); *see also* 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements [for evaluating medical opinions, set forth] in paragraphs (a) through (c) in this section."); *Jorge M.*, 2022 WL 4536267, at *11 (recognizing that "the new rules relieve ALJs from the burden of articulating their consideration of nonmedical source statements using the same standards that apply to medical opinions and prior administrative medical findings"). Indeed, "the regulations as amended do not require the ALJ to cite or discuss such evidence." *Jorge M.*, 2022 WL 4536267, at *12. Thus, the ALJ's consideration of the teacher questionnaire in this case, and the articulation of his reasoning for finding it "only somewhat persuasive" satisfied the procedural requirements of the agency's regulations and is a reasonable

interpretation of the evidence itself.

Accordingly, we find the ALJ's consideration of the nonmedical evidence, including a teacher questionnaire completed by S.M.R.V.'s school nurse, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### D. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of S.M.R.V.'s symptoms, including statements or testimony by the plaintiff on behalf of her daughter. *See generally* 20 C.F.R. § 416.902(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed.

App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 18–22.) This included the plaintiff's statements regarding the limiting effects of S.M.R.V.'s symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while S.M.R.V.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her mother's "allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18.)

Although the plaintiff quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the child's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the subjective allegations of symptoms, the evidence as a whole did not support limitations in excess of those set forth in the ALJ's determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of S.M.R.V.'s symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## E. Re-Weighing the Evidence

Finally, the plaintiff appears to assert more generally an argument that, viewing the record as a whole, there was substantial evidence to support a finding of disability, and thus the ALJ's contrary decision was in error. The plaintiff summarizes the evidence and appears to suggest that the ALJ's decision should be reversed because some of this evidence contradicts the ALJ's findings. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams*, 970 F.2d at 1182); *see also Connors*, 2022 WL 4080248, at *12 ("[A] federal court cannot reweigh the evidence on the record."); *Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020) (citing *Rutherford*). Having otherwise found substantial evidence to support the ALJ's determination, this claim of error is meritless.

## V.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that S.M.R.V. was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: October 20, 2022                    ***s/Joseph F. Saporito, Jr.***
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge